UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

F I L E D

JUN 1 7 2019

CLERK'S OFFICE
DETROIT

GREGORY STOKES,

　　　　　　　　　　Plaintiff,

v.

DETROIT PUBLIC SCHOOLS,

　　　　　　　　　　Defendant.
_____/

Case No. 17-cv-13205

Paul D. Borman
United States District Judge

## OPINION AND ORDER GRANTING DEFENDANT DETROIT PUBLIC SCHOOLS' MOTION FOR SUMMARY JUDGMENT (ECF #16) AND DENYING PLAINTIFF GREGORY STOKES' MOTION FOR SUMMARY JUDGMENT (ECF #23)

## I.　BACKGROUND

Plaintiff Gregory Stokes, an African-American male who was 55 years of age during the relevant time period, was previously employed by Defendant, Detroit Public Schools ("DPS").[1] After his contract expired, and he was not selected to fill the newly-created position of Executive Director – Talent Management, Plaintiff filed a four-count Complaint (September 20, 2017, ECF #1) against DPS, alleging

---

[1] DPS is the name commonly referred to for the School District of the City of Detroit. On July 1, 2016, through legislative action, DPS ceased education of students and now exists only to pay its debts. P.A. 92 of 2016, MCL 380.12(b). P.A. 92 created the Detroit Public Schools Community District to educate students formerly educated by DPS. (Def.'s Resp., ECF #19, PgID 1169.)

1

wrongful termination and failure to promote on the basis of age under the Age Discrimination in Employment Act ("ADEA"), 29 USC §621, *et seq.,* and age and gender under Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), MCL §37.2101, *et seq.* On November 22, 2017, Plaintiff filed an Amended Complaint (ECF #3), to include two counts under Title VII, 42 USC §2000e, for gender and age discrimination, as follows:

| | | |
|---|---|---|
| Count I: | Failure to Promote on the Basis of Gender – Title VII, 42 USC §2000e-2(a) | |
| Count II: | Unlawful Termination on the Basis of Gender – Title VII, 42 USC §2000e-2(a) | |
| Count III: | Failure to Promote Based on Age – ADEA, 29 USC §621 | |
| Count IV: | Unlawful Termination Based on Age – ADEA, 29 USC §621 | |
| Count V: | Denying Promotion on the Basis of Age/Gender – Elliot Larsen Civil Rights Act, MCL §37.2101, *et seq.* | |
| Count VI: | Unlawful Termination on the Basis of Age/Gender – Elliot Larsen Civil Rights Act, MCL §37.2101, *et seq.* | |

Before the Court are the Parties' cross-Motions for Summary Judgment. (ECF #16, 23.) On December 17, 2018, the Parties filed their Motions. (ECF #15, 16.)[2] On January 31, 2019, Defendant filed its Response to Plaintiff's Motion (ECF #19), and Plaintiff filed his Response to Defendant's Motion (ECF #20). On February 14,

---

[2] On April 15, 2019, Plaintiff re-filed his Motion and Response to Defendant's Motion to comply with Local Court Rules. (ECF #23, 24.)

2019, Plaintiff filed his Reply. (ECF #21.) Defendant did not file a reply in support of its Motion. On May 3, 2019, the Court held a hearing on the instant Motions.

## II. FACTS

### A. Plaintiff's Initial Employment with DPS

Plaintiff, a 55 year-old African-American male during the time of the alleged adverse actions, began his employment with DPS in 2006 as a Human Resources Administrator. (Dep. of Gregory Stokes, June 18, 2018, ECF #24-2, 15:12-19, PgID 2869). In 2010, the Human Resources Director at that time, Robyn Diamond, promoted Plaintiff to the position of Talent Acquisition Manager. (*Id.* at 17:22-18:21, PgID 2871-72.) Plaintiff did not have to go through an application and interview process for this promotion. *Id.* In March 2013, Gwendolyn DeJongh, the newly appointed Chief Human Resources and Labor Relations Officer, appointed Plaintiff to the position of Interim Executive Director of recruitment.[3] (*Id.* at 22-23.)

### B. The New Teacher Project

DPS had been under the control of emergency management since 2009. As part of an effort to restructure the central office into a "network model," DPS entered into a contract with consultants The New Teacher Project ("TNTP") in June 2015. (Dep. of Errick Greene, July 10, 2018, ECF #24-23, 45:9-17, PgID 3577.) As part

---

[3] None of Stokes' employment contracts specify his title beyond "Interim Executive Director" or "Acting Deputy Executive Director." (*See* Def.'s Mot. ECF #16-5, Ex. B, PgID 828.)

of this effort, TNTP evaluated and reconfigured roles where necessary to "rightsize" the organization, including roles within the Human Resources and Talent Management areas. (*Id.* at 35:17-23, PgID 3567.) TNTP was also engaged to assist with the transfer of control back to the school district from the emergency manager system. (*Id.* at 20:10-20, PgID 3552.) In October 2015, when Plaintiff was informed that his contract would not be extended, Darnell Earley was the emergency manager, and Errick Greene was his special assistant. (*Id.* at 7:21-22, PgID 3539.)

Nicholas Denton-Brown, a TNTP employee, was the Talent Acquisition Manager for the restructure. (Dep. of Nicholas Denton-Brown, July 26, 2018, ECF #24-9, 16:9-10, PgID 3084.) Denton-Brown's role was to recruit individuals for the various positions created, which included conducting initial screening interviews and assisting with the resume verification process. (*Id.* at 81:4-82:20, PgID 3149-50.) The Parties dispute whether "employment" had to be verified during the hiring process, or whether contacting references satisfied that aspect of the candidate screening process. (*Id.* at 81:13-82:1, PgID 3149-50.) It is notable that neither Party has produced a written recruiting, hiring and/or interviewing policy that was effective during 2015.

Once Denton-Brown recruited and screened an applicant, he would refer viable candidates to an interview committee for that particular position. (*Id.* at 68:24-

69:2, PgID 3136-37.) The hiring manager for the position of Executive Director –
Talent Management was Errick Greene. (*Id.* at 68:19, PgID 3136.)

On June 30, 2015, Plaintiff was offered a six-month contract as Acting Deputy
Director Executive Director, still reporting to DeJongh. (*See* Def.'s Mot. ECF #16-
5, Ex. B, PgID 828; Dep. of Cassandra Washington, June 19, 2018, ECF #24-11,
44:6-14, PgID 3253.) Plaintiff began reporting to DeJongh's replacement, Cassandra
Washington, on July 6, 2015. (Washington Dep., ECF #24-11, 54:4-5, PgID 3263.)

On October 22, 2015, Plaintiff received a notice of non-renewal of his contract
as of December 31, 2015 due to "Economic Necessity and/or Reorganization."
(Def.'s Mot., ECF #16-6, Ex. C, PgID 843.)[4]

Chanel Hampton, who was not a DPS employee at the time, first applied for
the higher position of Deputy Superintendent – Talent Management on November
3, 2015. (Denton-Brown Dep., ECF #24-9, 125:5-14, 29:13-17, PgID 3097, 3193;
Def.'s Mot., ECF #16-10, Ex. G, PgID 1012.) She submitted a cover letter
expressing her interest in that position as well as her resume. (Denton-Brown Dep.,
ECF #24-9, 29:8-17, PgID 3097.) Denton-Brown testified at his deposition that
Hampton's references were contacted by phone and verified. (*Id.* at 81:16-18, PgID
3149.)

---

[4] Plaintiff had received notices of non-renewal in the past, yet his contract had always
been renewed. (*See, e.g.*, Pl.'s Resp., ECF #24-8, Ex. 6, PgID 3061.)

On November 30, 2015, Denton-Brown emailed several TNTP employees a list of follow-up questions on various issues, including the progress of Hampton's Deputy Superintendent interview and the Executive Director – Talent Manager position:

> ...5. Miriam, any update from Cassandra about the talent acquisition logistics for the ED, Talent role? e.g. posting on DPS site vs on a 3rd party site? Who will manage processes like background checks, etc. for this role considering the conflict of interest with [Plaintiff]?
>
> 6. Andrew, any update on a Deputy Supe, Talent interview for Chanel Hampton? Ideally she would interview for that role and, if strong but not quite qualified for that position as we and Errick Greene suspect, *she would be offered the ED, Talent position.*

(Pl.'s Mot., ECF #16-11, PgID 1014.) (Emphasis added.)

Hampton went through the interview process for Deputy Superintendent – Talent Management, and the interviewers, including Greene and Emergency Manager Darnell Earley, determined that although she did not have sufficient experience for that position, she was a strong candidate for the Executive Director – Talent Manager position. (Denton-Brown Dep., ECF #24-9, 29:18-22, PgID 3097.) That position was yet to be posted as available, but Denton-Brown testified that Hampton was asked to apply for that role, as evidenced by emails between TNTP consultants and Greene on December 3 and 4, 2015. (*Id.* at 29:18-22.) On December 3, 2015, TNTP's Chris Henderson, Denton-Brown's manager (*id.* at 15:15), sent an email to Darnell Earley, copying Greene, stating:

6

EM Earley,

As we discussed yesterday, we have scheduled for you to meet with/interview Chanel Hampton who was moved through the pipeline from TJ Adams at 3:15pm today. She has met with Errick and with Tequilla Banks – VP TNTP as panel interviewers. The assessment is that she is a potentially strong candidate for ED Talent, but lacks the leadership and district experience to fill the Deputy Superintendent role.

I filled Cassandra in on the progress here. Cassandra advised that, like previous meetings, a second individual from DPS leadership or Talent/HR should join the interview and suggested Errick. Errick is available to join you at that time.

Overall, Cassandra appreciated the heads up. She reiterated that, per our discussion yesterday, the job would need to be posted (which will happen asap) so that additional individuals could apply for the role as well. As a result, it is Cassandra's position that no formal offers for the position can be extended until this occurs. Chanel has a competing offer she needs to respond to, so if you think she is the right fit we will potentially have to keep her interested for a couple of weeks or find an alternative solution to bring her on board quickly.

(Pl.'s Mot., ECF #23-15, PgID 2352.)

Greene replied later that day:

Mr. Earley and I met with Ms. Hampton today and we were both impressed by her. Mr. Earley would like to start to move her through the application/hiring process for the ED Talent position. Obviously, we'd like to start and conclude the process as quickly as possible.

(*Id.*)

Among the later emails in the chain, on December 4, 2015, Denton-Brown and Henderson exchanged several messages after Denton-Brown asked Henderson if he knew what Earley had told Hampton regarding the desire to hire her:

> Denton-Brown: ...Exciting to hear that they want Chanel for ED Talent. What was communicated to her? Is she willing to hold off on her other offer while this gets resolved?
>
> Henderson: [Greene] said EM Earley told her to seek the advice of a higher power in deciding on her offer or this...I assume they made it pretty clear to her they like her.
>
> Denton-Brown: That doesn't fill me with confidence considering how his conversation with Lynn went. Sounds to me like he comes from the same school of talent acquisition as [Plaintiff]. Would you mind if I followed up with her?
>
> Henderson: I think it's good to reach out and see where her head is at and encourage her to stay in the pipeline.
>
> Denton-Brown: OK, will do. Thanks.

(*Id.* at PgID 2351.)

After re-directing Hampton's consideration to the Executive Director – Talent Manager position, Denton-Brown testified that he did not see the need for Hampton to submit a new cover letter. (Denton-Brown Dep., ECF #24-9, 31:15-18, PgID 3099.) Errick Greene conducted Hampton's initial screening interview via telephone for Executive Director – Talent Manager and recommended her for an interview. (*Id.* at 125:2.)

The Executive Director – Talent Manager position was posted on the DPS site on December 7, 2015 and removed on December 11, 2015, several days less than the standard posting time of 10 to 14 days, according to Washington's testimony. (*Id.* at 11:3-6, PgID 3079; Washington Dep., ECF #24-11, 72:11, PgID 3281.) Washington did not refer to any written policies.

## C. The "Executive Director – Talent Management" Interviews of the Three Candidates

Plaintiff and the third candidate, William Lyons, both current DPS employees who applied for the Executive Director – Talent Management position, requested in-person rather than phone interviews, which were conducted by Denton-Brown. (*Id.* at 126:18-22, PgID 3194.) Denton-Brown recommended both Plaintiff and Lyons for interviews, despite Denton-Brown's belief that Plaintiff would not improve beyond his demonstrated "poor outcomes," having held the Interim/Acting Deputy Executive Director of recruitment position since 2013 without making significant changes to the staffing deficits. (Def.'s Mot., ECF #16-23, Ex. T, PgID 1139.) With regards to job performance, Plaintiff testified that he received a 3.45 out of 4 on his 2014-2015 evaluation, equating to "commendable." (Stokes Dep., ECF #24-3, 100:12-15, PgID 2955.) It must be noted, however, that TNTP, not DPS, was responsible for evaluating, recruiting, and restructuring positions (including Plaintiff's) at the time of the interviews. (Def.'s Mot., ECF #16-7, PgID 851, TNTP Contract.)

9

Greene, Orma Smith, and George Vary were selected as the interview committee for the Executive Director – Talent Management position. Smith and Vary were both Deputy Network Operations Leaders (liaisons between the school principals and the DPS central office). (Dep. of George Vary, June 19, 2018, ECF #24-12, 14:17-18, PgID 3377.) Vary was the Director of Grounds during 2015. (*Id.* at 11:14, PgID 3374.) The interviews for the three candidates – Plaintiff, Lyons, and Hampton – took place on December 18, 2015. (Def.'s Mot., ECF #16-16, Ex. M, PgID 1048.) The interview committee was provided with interview guidelines, the nepotism policy, the candidates' resumes, the job description for Executive Director – Talent Management, and a scoring sheet with the interview questions for each candidate. (Smith Dep., ECF #24-17, 15:22-25, PgID 3733.) The interview guidelines included a conflict of interest provision requiring an interviewer to recuse him/herself if he/she were business associates with the candidate. (Def.'s Mot., ECF #16-16, PgID 1053.)

Plaintiff testified that there were several "variations" and/or "inconsistencies" in the candidate selection process that demonstrated discrimination.[5] This included that Greene had worked for School Leaders Network, an organization associated with Teach for America in 2015, the same time period that Hampton was affiliated

---

[5] Plaintiff spent a great deal of time deposing the interview panelists on a Michigan Department of Civil Rights report. This report is inadmissible hearsay under Federal Rules of Evidence 802 and 805, and discussion thereof will not be considered.

with Teach for America. (Greene Dep., ECF #24-13, 90:2-14, PgID 3622; Def.'s Mot., ECF #16-16, PgID 1065.) Also regarding Hampton's Teach for America experience, Plaintiff testified that Hampton "padded" her experience by listing employment in her resume's timeline not logistically possible because of time overlap, unless Hampton had held some of the positions part-time. (Stokes Dep., ECF #24-3, 113:4-13, PgID 2968.) Defendant disputes that Hampton misrepresented information on her resume. Greene and Denton-Brown, who were both familiar with the structure of Teach for America, testified that they had no reservations about Hampton's resume and that her experience as listed was not contradicted by the timeline she presented. (Denton-Brown Dep., ECF #24-9, 47:21-48:25, PgID 3115-16; Greene Dep., ECF #24-13, 102:3-104:19, PgID 3634-36.)

Regarding the scoring sheets, there is clearly an error with transposition of names on George Vary's scoring sheets. Vary's scoring sheets include a set for Chanel Hampton (Def.'s Mot., ECF #16-17, PgID 1109), a set for "Gregory Stokes" (*id.* at PgID 1114), and a set for "Will Stokes" (*id.* at PgID 1114). Vary testified that he felt that Lyons (not Stokes) was the best candidate for the position.[6] Despite the admittedly confusing scores on the interview sheets, Vary's scores on the Committee

_____

[6] Plaintiff raised an issue of whether the interview committee had to make a unanimous decision. Vary did in fact score Lyons higher than Hampton on the Summary Recommendation Form. However, there has been no written policy produced by either side documenting a TNTP unanimity requirement, and Vary did agree as a committee member ultimately to recommend Hampton.

Summary Recommendation Form comport with his testimony that he believed Lyons was the best candidate, with a score of 84, Hampton ranked second with a score of 80, and Vary did not recommend Stokes for the position with a score of 64, which was below the pre-determined cut-off score of 80 required for eligibility for the position. Indeed, Plaintiff's interview scoring was well below the eligibility cutoff.

Although Vary testified that he believed William Lyons was the best candidate, the interview committee ultimately agreed to recommend Hampton, who accepted the offer for the position. (Vary Dep., ECF #24-12, 77:12-15.) Meanwhile, Plaintiff's contract was extended for an additional month. (Washington Dep., ECF #24-11, 107:24-108:2, PgID 3316-17.) The Parties contest whether this was to assist with transition, or, as Plaintiff claims, to "train" Hampton as evidence that she was not qualified. (*Id.*) Plaintiff points to an email purportedly sent to Plaintiff by Hampton four days after she commenced, thanking Plaintiff for "training" her "well." (Stokes Dep., ECF #24-2, 50:19-25, PgID 2905.) The Court concludes that because Hampton was a DPS outsider assuming a new position, it does not establish that she was unqualified, or that Plaintiff was more qualified for that position.

## III. STANDARD OF REVIEW

Summary judgment is appropriate where the moving party demonstrates that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477

U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). A fact is "material" for purposes of a summary judgment motion where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Midwest Media Prop., L.L.C. v. Symmes Twp., Ohio*, 503 F.3d 456, 469 (6th Cir. 2007) (quoting *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"Rule 56(e) identifies affidavits, depositions, and answers to interrogatories as appropriate items that may be used to support or oppose summary judgment." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Taft Broadcasting Co. v. United States*, 929 F.2d 240, 247 (6th Cir. 1991) (internal quotation marks omitted) (quoting *Celotex*, 477 U.S. at 323). If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," will mandate the

entry of summary judgment. *Celotex*, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

"The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. The plaintiff must present more than a mere scintilla of the evidence. To support his or her position, he or she must present evidence on which the trier of fact could find for the plaintiff." *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000) (internal citations and quotation marks omitted). The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–587 (1986) (footnote and internal quotations omitted).

In making the determination on summary judgment whether there are genuine issues of material fact for trial, the court must draw all reasonable inferences in favor of the non-moving party. *See Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir.

2015). "'The central issue is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Binay v. Bettendorf*, 601 F.3d 640, 646 (6th Cir. 2010) (quoting *In re Calumet Farm, Inc.*, 398 F.3d 555, 558 (6th Cir. 2005)). At the same time, plaintiff must produce enough evidence to allow a reasonable jury to find in his favor by a preponderance of the evidence, *Anderson*, 477 U.S. at 252, and "[t]he 'mere possibility' of a factual dispute is not enough." *Martin v. Toledo Cardiology Consultants, Inc.*, 548 F.3d 405, 410 (6th Cir. 2008) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (internal citations omitted).

Ultimately, the party who bears the burden of proof must present a jury question as to each element of the claim. *See Davis*, 226 F.3d at 511. Plaintiff cannot meet that burden by relying solely on "[c]onclusory assertions, supported only by [his or her] own opinions." *Arendale v. City of Memphis*, 519 F.3d 587, 560 (6th Cir. 2008). Plaintiff must show probative evidence, based "on more than mere speculation, conjecture, or fantasy," to prevail. *Id.* at 601 (quoting *Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir.2004)).

All evidence submitted in opposition to a motion for summary judgment must ultimately be capable of being presented in a form that would be admissible at trial:

The submissions by a party opposing a motion for summary judgment need not themselves be in a form that is admissible at trial. Otherwise, affidavits themselves, albeit made on personal knowledge of the affiant, may not suffice, since they are out-of-court statements and might not be admissible at trial. *See* Fed. R. Evid. 801(c), 802. However, the party opposing summary judgment must show that she can make good on the promise of the pleadings by laying out enough evidence that will be admissible at trial to demonstrate that a genuine issue on a material fact exists, and that a trial is necessary. Such "'evidence submitted in opposition to a motion for summary judgment must be admissible.'" *Alpert v. United States*, 481 F.3d 404, 409 (6th Cir. 2007) (quoting *United States Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1189 (6th Cir.1997)). That is why "'[h]earsay evidence . . . must be disregarded.'" *Ibid.* It is also the basis of this court's repeated emphasis that unauthenticated documents do not meet the requirements of Rule 56(e).

*CareSource*, 576 F.3d at 558-59 (internal citations omitted).

A court "may not make credibility determinations or weigh the evidence" in ruling on motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

## IV. ANALYSIS

### A. Wrongful Termination and Promotion Claims

For purposes of both Parties' Motions only, DPS concedes that Plaintiff has established a *prima facie* case of age and gender discrimination as alleged. Therefore, the issues at bar are whether Defendant has provided sufficient non-discriminatory business reasons for its conduct, and if so, whether Plaintiff has demonstrated that those reasons were pretextual for adverse action motivated by discrimination.

16

Plaintiff claims that he was wrongfully terminated and not selected for the position of Executive Director - Talent Management due to his age and/or gender in violation of Title VII, the ADEA and ELCRA. In order to establish a *prima facie* case of intentional discrimination under Title VII, ELCRA[7] or the ADEA on an indirect evidence theory, Plaintiff must prove that: 1) he belonged to a protected class; 2) he was subject to an adverse employment action; 3) he was qualified for the position; and 4) that he was treated differently than "similarly situated" employees for the same or similar conduct or was replaced by a non-group member. *See Humenny v. GenEx Corporation, Inc.*, 390 F.3d 901, 906 (6th Cir. 2004) (Title VII); *Lytle v. Malady*, 458 Mich. 153, 172-73 (1998) (ELCRA); *Tuttle v. Metro Gov't*, 474 F.3d 307, 317-319 (6th Cir. 2007) (ADEA).[8]

For Plaintiff's failure to promote claims, Plaintiff must show that: (1) he is a member of the protected class; (2) he applied for and was qualified for a promotion;

---

[7] Claims of discrimination under ELCRA are considered under the same legal framework and standards as Title VII. *Humenny v. GenEx Corporation, Inc.*, 390 F. 3d 901, 906 (6th Cir. 2004).

[8] The Court notes that neither Party raised the issue that this matter involves a reverse-gender discrimination claim, in which case the prima facie elements differ. "A plaintiff in a reverse-discrimination claim may establish a prima facie case only upon showing that background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the [male] majority ... and upon a showing that the employer treated differently employees who were similarly situated but not members of the protected group." *Briggs v. Potter*, 463 F.3d 507, 517 (6th Cir. 2006) (internal citations omitted).

(3) he was considered for and was denied the promotion; and (4) another employee (or an applicant) of similar qualifications who was not a member of the protected class received the promotion. *See Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 812-13 (6th Cir. 2011) (ADEA); *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 614 (6th Cir. 2003) (Title VII and ELCRA). If Plaintiff can establish a *prima facie* case (as is conceded here), the burden shifts to DPS to articulate a legitimate, nondiscriminatory reason for its decision. *See Humenny*, 390 F.3d at 906; *Lytle* at 173. If DPS meets its burden, the presumption of discrimination drops from the case. Plaintiff must then prove, by a preponderance of the evidence, that DPS's articulated, nondiscriminatory reasons were pretext for discrimination. *Id.*

To demonstrate pretext, Plaintiff must show by a preponderance of the evidence that DPS's proffered reasons: (a) had no basis in fact; (b) did not actually motivate the non-hiring; or (c) were insufficient to motivate the refusal to hire. *Corrigan v. U.S. Steel Corp.*, 478 F.3d 718, 728 (6th Cir. 2007). However, even if Plaintiff successfully proves that DPS's reasons are pretextual, he must still demonstrate that the true reason is discriminatory. *Lytle* at 175. "In other words, plaintiff must not merely raise a triable issue that the employer's proffered reason was pretextual, but that it was a pretext for age...discrimination." *Id.* at 175-76.

## B. DPS's Articulated Non-Discriminatory Motives and Plaintiff's Proffered Evidence of Pretext

DPS conceded the *prima facie* element for purposes of its Motion and Plaintiff's Motion, thereby requiring Defendant DPS to set forth non-discriminatory reasons for hiring a younger female candidate. DPS argues that Hampton met the minimum qualifications for the Executive Director – Talent Management position, and she performed better on her interview than Plaintiff. Plaintiff does not distinguish between his claims for termination, failure to promote, gender discrimination, or age discrimination in any of his arguments, in either his Motion or his Response to DPS's Motion, but rather lumps all of the above together. Plaintiff counters that Hampton was pre-selected for the position and that interview/hiring policies were not followed, including but not limited to the allegation that Hampton was "less qualified" by virtue of her "padded" resume, and that fatal procedural errors occurred during the interview scoring process.

Plaintiff's alleged pretextual "discrepancies" were clearly countered by DPS's responses. The two deponents with a working knowledge of Teach for America, Greene and Denton-Brown, undermined Plaintiff's attempt to discredit Hampton's resume. Hampton's references were checked, and she was determined to meet the minimum criteria for the position through the Talent Manager pre-screening process. There is also no evidence that Greene was ever a "business associate" of Hampton in violation of the conflict of interest policy. Therefore, Plaintiff's resume claim does

not "serve as a basis for an inference of unlawful discrimination." *Hazle v. Ford Motor*, 464 Mich. 456 (2001).

Plaintiff has not established evidence of irregularities in the application or selection process for the position for which she was hired sufficient to raise a question of fact as to DPS's business reasons for hiring Hampton during that period of DPS restructuring under emergency management.

The November 30 and December 3-4, 2015 email chains do suggest that Hampton was at the very least the "front runner" for the Executive Director – Talent Management job. After she had interviewed with Darnell Earley, Greene and an interview panel for the Deputy Superintendent – Talent Management position, she had further "informal" discussions with Denton-Brown, during which he encouraged her to apply for the Executive Director job. The fact of the matter remains that Plaintiff has provided little to no evidence that gender or age was the basis for any alleged preferential treatment. Pre-selection does indeed call into question the motivation of a selection committee, but pre-selection is permissible so long as is not based on a discriminatory criterion such as gender. *Gostree v. State of Tenn.*, 796 F.2d 854, 862 (6th Cir. 1982) ("Preselection, of course, does not violate Title VII when such preselection is based on the qualifications of the preselected party and not on some basis prohibited by Title VII."). In the instant case, there is no factual

evidence of discrimination based on gender other than the fact that a female was hired for the open position.

Plaintiff's own opinion, that he was the more qualified than Hampton, is insufficient evidence of discrimination. *Briggs*, 463 F.3d at 516 ("[Plaintiff's] 'subjective view' of [his] qualifications in relation to those of other applicants, without more, cannot sustain a claim of discrimination.") (internal citations omitted). Plaintiff relies solely on the interviewers' use of the terms "enthusiasm" and "energy" in an attempt to extrapolate age discrimination. Those terms, however, do not support a claim for age discrimination. *Crabbs v. Copperweld Tubing Products*, 114 F.3d 85, 89 (6th Cir. 1997) (employer statements about younger promoted employee's "energy and enthusiasm" did not imply age discrimination); *Sander v. Gray Television*, 478 F. App'x 256, 266 (6th Cir. 2012) (comment on energy level not related to age).

Courts have also closely scrutinized subjective requirements, such as a "can-do" personality. *Arnold v. Cinn. Sportservice*, No. 12-cv-460, 2013 WL 3761071, at *7 (S.D. Ohio Jul. 16, 2013) (citing *Grano v. Dep't of Dev. of City of Columbus*, 699 F.2d 836, 837 (6th Cir. 1983)). "Moreover, the legitimacy of the articulated reason for the employment decision is subject to particularly close scrutiny where the evaluation is subjective *and the evaluators themselves are not members of the protected minority.*" *Grano* at 837 (emphasis added). In this case, although

21

Hampton's perceived enthusiasm for change could be considered a subjective criterion, all three of the members of the interview committee were in the protected age group, and two were the same gender as Plaintiff (Greene – male, 48; Vary – male, 63; Smith – female, 46). The interview committee viewed Hampton as an individual with new ideas who could affect change in the school district recruitment situation, as opposed to Plaintiff, who had demonstrated little improvement in the area of recruitment during his two years in a similar interim/acting position, and who also appeared defensive about his performance during the interviews. *See Hazle v. Ford Motor Co.*, 464 Mich. 465, 473 (2001) ("Savitskie testified that he saw plaintiff as a person who did not seem to appreciate the need for change. Donald Harris expressed a similar view, testifying that he believed Block to be a person 'who could make changes, incorporate those changes and motivate people to accept changes.'"). The interview committee agreed that Hampton was the best candidate, and precedent requires courts to defer to the business judgment of employers in all but the most extreme circumstances. *See Covington v. MCI Worldcom Network Servs. Inc.*, 93 F. App'x 837, 840 (6th Cir. 2004) ("[A] trial court does not 'sit as a super-personnel department' in Title VII cases to second-guess the wisdom of an employer's standards.") (quoting *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 462 (6th Cir. 2004)).

Further, the email from Hampton thanking Plaintiff for "training" her a few days after she began her role at DPS is hardly evidence that she was not qualified for the position, as Plaintiff suggests. "The isolated fact that a younger person eventually replaces an older employee is not enough to permit a rebuttal inference that the replacement was motivated by age discrimination." *Heddrick* at 462. Hampton's qualifications, interview performance, and the fact that the interviewers were in the protected age category defeats Plaintiff's argument for pretext.

With regards to Vary's interview scores, Vary does not waiver from asserting that Stokes was never his selection for the Executive Director –Talent Management positon. Regardless of which number is used to calculate Vary's score for Stokes (the 57 total points on his Vary interview form, or the 84, 64, or 76 points from the possibly transposed forms), Stokes' combined scores from all three interviewers could never rise above the 80-point cutoff determined by the committee necessary to place him in the eligibility pool. This is consistent with Vary's deposition testimony, and there is no genuine issue of material fact as to whether Vary's conduct was motivated by a desire to discriminate against Stokes. He indeed chose another male candidate in the protected age category. Despite documentary discrepancies – no matter how those are viewed – Vary consistently indicated a preference for Lyons. It does not appear that Stokes was "scored twice" ("a lawyer argument rather than statement of facts to be considered in determining whether this case should go

forward," *Briggs* at 512), as Vary generated two scores, an 84 and a 64, but appears to have in error assigned the 84 to Plaintiff on the interview sheet and the 64 to Lyons. Vary rectified that error on the final Committee Summary Recommendation where he assigned Lyons an 84 and Stokes a 64. (ECF #16-18, PgID 1127, Committee Summary Recommendation.) There is one score from Vary per candidate. Plaintiff's score from the interview committee was 63.3 – well below 80, so he could not have been recommended for the position.

Lastly, if Hampton was indeed terminated six months after commencing the Executive Director position, that has no bearing on whether DPS's decision to hire her and/or terminate Plaintiff was motivated by discrimination. An employer's decision may be unfair, unwise, unreasonable, or even all three, but it is only actionable under Title VII's discrimination provisions if it was discriminatory. *See Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 462 (6th Cir. 2004) ("As we have oft times repeated, 'it is inappropriate for the judiciary to substitute its judgment for that of management.'") (quoting *Smith v. Leggett Wire Co.*, 220 F.3d 752, 763 (6th Cir. 2000)); *Hazle* at 527 ("[T]he plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent or competent.").

24

There is no genuine issue of fact as to pretext, nor could any rational trier of fact find that the action was discriminatory.

## V.    CONCLUSION

Based on the reasons stated above, the Court GRANTS Defendant Detroit Public Schools' Motion for Summary Judgment and DENIES Plaintiff Gregory Stokes' Motion for Summary Judgment.

IT IS SO ORDERED.

Dated:  June 17, 2019

Paul D. Borman
United States District Judge